DECISION. *Page 2 
{¶ 1} Yosiah Pitts was arrested on two counts of felonious assault for beating his girlfriend, Amber Key. Pitts pleaded guilty to one of the charges, and the prosecutor dismissed the other charge. Before Pitts's sentencing, Key submitted an affidavit asking the court not to send Pitts to prison. Pitts moved to withdraw his guilty plea; the trial court denied the motion. Pitts was sentenced to five years in prison. In this appeal, he now challenges both the denial of his motion to withdraw and the sentence. We affirm.
 I. A Brutal Beating {¶ 2} In January 2007, Pitts brutally beat Key, his girlfriend and the mother of his children, with a broomstick. Key's injuries included a broken nose, a cracked occipital bone, a broken eye socket, jaw pain, two severely swollen black eyes, serious bruising, constant back pain, and scratches on her arms. The record also shows that Pitts beat Key in front of their children. Pitts was indicted on two counts of felonious assault.[1] He was released on bond shortly after his arrest.
 {¶ 3} Pitts's case was set for trial in late May 2007. Key was to be a witness for the prosecution, but did not appear. The prosecutor stated that the state could not make a case without Key and asked the court to "order a forthwith" to force Key to testify, because the prosecutor believed that was the only way Key would testify. The prosecutor stated that Key's "extreme fear for her safety" was the reason that she had not appeared that day. Pitts's attorney countered that Key's reluctance to testify against Pitts was out of love *Page 3 
rather than fear. The trial court granted a continuance. The new trial date was set for mid-June.
 {¶ 4} Ten days before the trial date, Pitts was again arrested for hitting Key. The prosecutor requested an increase in Pitts's bond. The trial court granted the request. The state asserted in its motion that, during this attack, Pitts had threatened to kill Key and that Key feared for her safety.
 {¶ 5} Key appeared in court on the day that had been set for Pitts's trial. But instead of proceeding with the trial, Pitts entered a guilty plea to one of the felonious-assault charges (causing physical harm to another by means of a deadly weapon),[2] and the other felonious-assault charge[3] was dismissed. The trial court reviewed the charges with Pitts and ensured that he understood what he was pleading to, the possible sentences, and what rights he was giving up by pleading guilty. Pitts stipulated to the facts of the case and stated that he understood the charges, his rights, and the possible sentences. The trial court accepted his plea. Pitts requested a presentence investigation and the trial court granted his request. Sentencing was set for July 11.
 II. The Presentence Investigation {¶ 6} The presentence-investigation report contained affidavits about several previous assaults and incidents of criminal damaging that Pitts had been accused of, statements about Pitts's behavior after his arrest, photographs of Key's injuries, and details of the January attack. *Page 4 
 {¶ 7} Various affidavits alleged that Pitts (1) in September 2001, had struck another person in the head with pliers; (2) in March 2006, had punched Key in the face, pushed her onto the floor, and beaten her with a shoe; (3) in June 2006, had hit Key's brother in the face with his fist and used a chair to break the windows of his car; (4) in June 2006, had used a rock to break a woman's bedroom window; and (5) had violated the terms of his probation for an earlier arrest by not attending drug treatment or reporting to his probation officer. Despite this history of violence, the only charge for which Pitts had been convicted was a disorderly-conduct charge stemming from the incident when Pitts had punched Key in the face and beaten her with a shoe.
 {¶ 8} Pitts continued to terrorize Key after his January arrest. He was arrested in June for hitting her in the head. The arresting officer stated that Pitts had gone to Key's apartment two separate times to intimidate her and to convince her to drop the charges against him. Key's caseworker reported that Pitts had broken into Key's apartment in June — she had slid a note under her door begging for help. A neighbor saw the note and called the police.
 {¶ 9} The photographs showed Key in the hospital after the January attack. They depicted the clearly defined bruises that appear to have been made by a stick of some sort. They also showed that Key's eyes were severely swollen and bruised.
 {¶ 10} Pitts stated that he had "accidentally" pushed Key down some steps, and that he had been high on Ecstasy and drunk and could not otherwise remember the events. *Page 5 
 III. Key's Affidavits and Pitts's Motion to Withdraw {¶ 11} After Pitts entered his guilty plea, Pitts's attorney received two affidavits that purportedly contained statements by Key. One was dated June 25 and stated that (1) Key had never wanted to come to court; (2) she had appeared only because the department of children's services had threatened to take her children away from her if she did not testify against Pitts; (3) since the first incident in January, there had been no more problems (this statement was directly contradicted by both Pitts's June 3 arrest for domestic violence against Key and Key's affidavit from May 2006 stating that Pitts had hit her in the face, pushed her onto the floor, and beaten her with a shoe); (4) Pitts had only beaten her because he was drinking and using drugs; (5) she had never been afraid of Pitts; and (6) Pitts should not go to prison. The second affidavit stated that Pitts had not used a weapon in the beating. This directly contradicted her statement in the victim-impact report where she said that Pitts had beaten her with a broomstick. The photographs of Key's injuries also strongly suggest that Key was attacked with a stick of some sort — it is highly unlikely that a hand, a fist, or a fall down some steps caused Key's bruises.
 {¶ 12} Pitts moved to withdraw his guilty plea. The court denied the motion and imposed the five-year prison sentence.
 IV. Assignments of Error {¶ 13} On appeal, Pitts asserts that the trial court (1) violated his constitutional rights by denying his motion to withdraw his guilty plea; (2) abused its discretion by denying his motion to withdraw his guilty plea; and (3) erred by imposing an excessive sentence. *Page 6 
 {¶ 14} Because the trial court correctly denied Pitts's motion to withdraw and sentenced Pitts within the applicable statutory range, the assignments of error are without merit.
 V. Motion to Withdraw Guilty Plea Properly Denied {¶ 15} Pitts argues that the trial court erred by denying his motion to withdraw his guilty plea. He contends that he was prejudiced because if he had been allowed to withdraw his plea, the case likely would have been dismissed because Key would not have testified; that the trial court did not give Key's affidavits full and fair consideration; that the court failed to address the issue of substance abuse; and that the court should have respected Key's wishes concerning Pitts's fate because she was the victim. Finally, Pitts argues that there was no good reason to deny the motion because the state would have been in the exact position it was in prior to the guilty plea.
 {¶ 16} "[A] presentence motion to withdraw a guilty plea should be freely and liberally granted. Nevertheless, it must be recognized that a defendant does not have an absolute right to withdraw a plea prior to sentencing.[4] To prevail on a motion to withdraw, a defendant must offer a reasonable and legitimate reason for withdrawing the plea.[5] A trial court is in a better position than an appellate court to witness the litigants and to evaluate their demeanor. Thus, we review the trial court's decision whether to grant a motion to withdraw a guilty plea under an abuse-of-discretion standard.[6] *Page 7 
 {¶ 17} We consider a list of factors to determine whether the trial court abused its discretion in denying Pitts's motion: whether (1) Pitts was represented by highly competent counsel; (2) the trial court gave Pitts a complete Crim. R. 11 hearing before he entered his plea; (3) the trial court conducted a full and impartial hearing on Pitts's motion to withdraw; (4) the trial court gave fair consideration to Pitts's motion; (5) Pitts's motion was made within a reasonable time; (6) Pitts's motion set out specific reasons for the withdrawal; (7) Pitts understood the nature of the charges and the possible sentences; and (8) Pitts was possibly not guilty of the offense.[7]
 {¶ 18} Although two factors favor Pitts (Pitts filed his motion within a reasonable time, and the motion offered specific reasons for the withdrawal), most of the factors demonstrate that the trial court did not abuse its discretion. The record reflects that Pitts's attorney was competent, that the court held a thorough Crim. R. 11 hearing, that the court gave due consideration to Pitts's motion, and that the court did not believe that Pitts was not guilty.
 {¶ 19} The trial court conducted a full Crim. R. 11 hearing. It went into great detail about Pitts's rights, what he would be giving up by pleading guilty, the nature of the charges against him, and the possible sentences. Pitts told the trial court that he understood the charges, the rights he was giving up, and the possible sentences. The trial court asked Pitts if he had been coerced into entering the guilty plea; Pitts stated that he had not been coerced. But at the hearing on his motion to withdraw, Pitts argued that he had not entered the plea knowingly, intelligently, and voluntarily because it was motivated by a desire to protect Keys from being forced either to *Page 8 
testify or to go to jail. We are not persuaded by Pitts's argument. During his Crim. R. 11 hearing, Pitts gave no indication that he was entering his plea only because Key might go to jail otherwise. The trial court was able to evaluate Pitts's credibility and demeanor, and it determined that Pitts was knowingly, intelligently, and voluntarily entering the plea. We will not second-guess the trial court's decision.
 {¶ 20} Pitts argues that the court did not fairly consider Key's affidavits. Not so. One of Key's affidavits told a contradictory story about how her injuries had occurred; contrary to her other statements about the attack, this affidavit said that her severe injuries were not a result of being beaten with a bludgeon. The trial court had the discretion to believe Key's earlier statements. In her second affidavit, Key requested that the trial court allow Pitts to be spared from punishment. Key stated that Pitts was a good man and a good father, and that the brutal beating was an aberration. (The affidavit did not mention the other two documented instances of Pitts's hitting her.) The record reflects that the trial court considered the affidavits; just because the court did not believe what Key stated in her affidavits, as opposed to what appeared in her victim-impact statement, does not mean that the trial court abused its discretion.
 {¶ 21} The trial court also considered the possibility that Pitts had not committed the felonious assault. The court noted that Key was a reluctant witness and that she had stated that the violence was an aberration that would not happen again. But the trial court astutely noted, "But all throughout what struck me about this was that while she didn't want the charges to go forward, she didn't deny the incident took place." Her victim-impact statement also said that Pitts had repeatedly hit her in the face and body with a broomstick and that she still, months later, suffered from pain in her jaw and back. *Page 9 
 {¶ 22} No one disputed that Pitts had assaulted Key. And the photographs of her injuries left no doubt that she had been brutally attacked. Pitts argues that the trial court should have allowed him to withdraw his plea because Key, the victim of his violence, did not want him to go to prison.
 {¶ 23} The prosecutor noted that Key was in extreme fear for her safety. The state pointed out in its brief that it not unusual for a victim of domestic violence to refuse to testify against her attacker because of fear. But Pitts argues that Key's reluctance to testify and stated preference that he not be imprisoned were out of love.
 {¶ 24} Whether Key's actions were out of love or fear is not relevant. Pitts made the choice to beat Key with a broomstick, in front of their children, until he broke her bones and caused lasting damage. If this attack had taken place between strangers, there would be no doubt that the perpetrator would be prosecuted. Pitts deserves to go to prison for violently assaulting another person and causing serious injuries.
 {¶ 25} The trial court did not abuse its discretion by denying Pitts's motion to withdraw his guilty plea. It considered all the relevant factors and made an informed, intelligent decision. We overrule this assignment of error.
 VI. Sentence Proper {¶ 26} Pitts also argues that the trial court erred by sentencing him to five years in prison. The Ohio Supreme Court has determined that "trial courts have full discretion to impose a prison sentence within the statutory range."[8] Pitts was State v. Foster, 109 Ohio St.3d 1,2006-Ohio-856, 845 N.E.2d 470, at ¶ 100. *Page 10 
convicted of felonious assault, a second-degree felony.[9] The applicable statute provides a range of two to eight years' imprisonment for a second-degree felony.[10] The trial court had the discretion to sentence Pitts to five years. Further, the record demonstrates that Pitts is a violent man and a danger to Key, to their children, and to society. Perhaps five years will give Pitts time to reform his behavior. At the very least, while he is in prison he will not have the opportunity to attack Key or to teach his children that domestic violence is acceptable.
 {¶ 27} For the foregoing reasons, we affirm the trial court's judgment.
Judgment affirmed. HENDON and DINKELACKER, JJ., concur.
[1] R.C. 2903.11(A)(1) and R.C. 2903.11(A)(2).
[2] R.C. 2903.11(A)(2).
[3] R.C. 2903.11(A)(1).
[4] State v. Xie (1992), 62 Ohio St.3d 521, 527, 584 N.E.2d 715.
[5] Id.
[6] Id. at 525.
[7] State v. Fish (1995), 104 Ohio App.3d 236, 240,661 N.E.2d 788.
[8] State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, at ¶ 100.
[9] R.C. 2903.11.
[10] R.C. 2929.14. *Page 1